ERNEST H. HEARN *vs.* JOHN HEARN.

PROVIDENCE—JULY 25, 1902.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Equity. Release. Fraud. Parent and Child. Champerty.*

A. having secured a verdict against his father, B., the latter visited the home of A., together with a witness, in regard to a settlement of the suit. B. had in his possession a release previously prepared, and, after an extended interview, by appeals to A.'s filial regard, induced A. to execute the release. The consideration expressed in the release was nominal, but upon its delivery B. paid to A. the sum of $2,000. The court found that the real consideration was not only the $2,000, but also an agreement to give the son permanent employment at not less than $12 a week with the expectation of succeeding to B.'s business, and also an agreement to pay the son's counsel fees, and that the fact that the release did not express the whole consideration was due to the misrepresentation and fraud of B.:—

*Held,* that, upon the above state of facts, taken in connection with the relation of the parties to each other, A. having placed B. *in statu quo,* the release would be avoided.

*Held,* further, that B., having denied all liability for counsel fees, could not raise the question of an alleged champertous agreement between A. and his counsel.

BILL IN EQUITY seeking relief set forth in opinion. Heard on bill, answer, and proof. Relief granted.

ROGERS, J. This is a bill in equity brought for the purpose of obtaining the avoidance and cancellation of a release in writing and under seal given by the complainant to the respondent and which it is alleged was obtained by misrepresentation and fraud.

The undisputed facts are that the complainant, who is twenty-eight years of age, is the son of the respondent, that on October 5, 1900, the complainant recovered a verdict against the respondent for $5,178.60 in the Common Pleas Division of this court, that thereafter said respondent filed his petition for a new trial in this Division, and which petition has been submitted to this court for decision; that said verdict was secured by an attachment on the respondent's personal property; that on the

evening of March 30, 1901, the complainant and the respondent had an interview at the complainant's residence in Taunton, Mass., in regard to a settlement of said law suit, at which the complainant and his wife, and the respondent and one Patrick Creed, were the only persons present; that at that interview (but whether on said March 30th or on the morning of March 31st, is disputed) the complainant executed and delivered under seal a general release to the respondent of all actions, cause of actions, debts, dues, claims and demands both in law and equity, and especially referring to the verdict the complainant had recovered against the respondent, the consideration expressed being nominal, but that upon the delivery thereof the respondent paid to the complainant the sum of $2,000 ; and that upon the filing of this bill on April 18, 1901, the complainant paid the sum of $2,000 into the registry of this court to await the determination of this suit.

The case is now before us on bill, answer, and proofs, and the issues as agreed on by the parties are as follows, viz.:

1st. Was the consideration for the release mentioned in the bill, the sum of $2,000 cash paid to complainant, and respondent's agreement to provide complainant with employment at a minimum salary of $12 a week, as long as respondent should remain in business, and the agreement of respondent to pay the attorneys of complainant ?

2nd. Was the consideration for said release only said sum of $2,000 paid to complainant ?

3rd. Was said release obtained by promises insincerely made ?

4th. Was said release obtained by fraud ?

5th. Was said release delivered on Sunday ?

(1)   In addition to the undisputed facts already detailed a careful examination of the testimony satisfies us of the existence of the following facts, viz.:—that the respondent was very anxious to settle the case in which the complainant had obtained a verdict against him and for the smallest possible figure; that he had visited Taunton where his son resided, from Providence where he himself lived, several times for that purpose, that on March 30, 1901, he again went there meeting a man

named Creed, who instead of being a disinterested party as he himself swore to being, and as counsel argued, was a mere tool of the respondent to aid the respondent to accomplish his purpose ; that having had a release drawn up by a lawyer in Taunton the respondent and Creed called at the complainant's house, and, after an interview with the complainant and his wife extending through several hours, induced the complainant to sign the same ; that the respondent appealed to his son's natural filial regard and trust in his father's honor, and urged the lack of necessity of having aught but the amount of money named as the consideration of the release ; that the real consideration therefor was not only $2,000 cash, but also an agreement to give the son permanent employment at not less than $12 a week with the expectation of succeeding to the father's business, that of a saloon-keeper, and also an agreement to pay the son's counsel fees which were to be one half of the amount recovered ; and that the release did not express the whole consideration was due to the misrepresentation, undue influence and fraud practiced by the respondent upon the complainant.

The testimony of the complainant and his wife on one side, and that of the respondent and the witness Creed on the other, as to what took place at the interview on the evening of March 30, 1901, are in such irreconcilable conflict as to utterly exclude the idea that both sides are telling nothing but the truth.

The testimony of the complainant and his wife practically agree, and under the circumstances seem reasonable, and command our confidence. On the other hand the testimony of the respondent and Creed contradict each other in such a way as to thoroughly impair confidence in both. The father swore (Rec. p. 109) as follows : "I told him if he came to work for me I could give him $12 a week. . . . I told him I would pay him $12 a week. Q. 792. Did you ever agree to pay him $12 a week during life ? A. No sir. Q. 793. You did say you would furnish him with employment ? A. Yes sir. The amount of money I was going to give him so that he could go into this ten per cent. business alone." See also Rec. p. 127.

Creed in his testimony not only frequently contradicts himself, but also the respondent. Creed swears (Rec. p. 293) "C. Q. 2167. What did Ernest say about making a contract about work? A. His father said he could work there as long as he wanted; 'you say you have turned over a new leaf, you can come there and get $12 a week and when I can do better I will do better.' C. Q. 2168. When did he say that? A. That was said before the thing was signed. There wasn't a thing said about lawyer business until the thing was settled. C. Q. 2169. He said he could work there as long as he was in business? A. No. . . . C. Q. 2171. What did he say? A. He said he would give him $12 a week as long as he done all right. He says, 'I will give you more if I can.' C. Q. 2172. Did Ernest want that inserted in the release? A. I didn't understand he wanted it inserted in the release. He wanted a writing to that effect. I don't know he said anything about the release, and his father said he would not give it to him. C. Q. 2173. What did you say? A. Why, I told him it wasn't necessary for him to have that. 'It is as much your interest to take care of his business as it is for himself. What he has got there will be yours the same as the rest. One son, maybe two, I don't know how many more he has.' C. Q. 2174. You told Ernest that it wasn't necessary that should be in writing what he wanted? A. I told Ernest the writing for employment would not amount to that [snapping his fingers] and it wouldn't. . . C. Q. 2177. You and John Hearn induced Ernest not to put in writing the agreement as to giving him employment? A. Well, I would not swear that I had anything of that kind in my mind at all. I simply said to him—'well, Ernest, the fact is that the property which your father has got, if he has any, is as much your interest as it is his,' which I believed to be true when I said it, and I said 'no writing that you may get from him will be of any service to you provided that you done wrong. I have had contracts for help myself and various other things, and I know that a contract don't amount to a great deal.'"

The respondent swore, Rec. p. 127, as follows :—"C. Q. 930. While you were discussing the settlement, the matter of his attorneys' pay came up between you, didn't it? A. No sir.

C. Q. 931. Not at all? A. Not at all. Never was mentioned. C. Q. 932. Never mentioned in any way? A. Nothing mentioned about attorneys at all. C. Q. 933. He agreed to take this money from you without any regard to paying his attorneys, and he didn't speak of the subject of paying his attorneys that night? A. Never mentioned a word about it. I supposed he was going to pay his attorneys out of that $2,000. I didn't know the agreement he had made with his attorneys."

On the other hand while Creed does not admit that the respondent promised to pay the attorneys' fees, yet he swears at length about talk between the complainant and himself before the father about the attorneys' fee, and also of the complainant's talking to his father about it. Rec. pp. 288 to 291.

Judge Story in his work on Equity Jurisprudence, section 309, says:—"The natural and just influence which a parent has over a child renders it peculiarly important for courts of justice to watch over and protect the interests of the latter; and therefore all contracts and conveyances whereby benefits are secured by children to their parents are objects of jealousy, and if they are not entered into with scrupulous good faith, and are not reasonable under the circumstances, they will be set aside, unless third persons have acquired an interest under them; especially where the original purposes for which they have been obtained are perverted; or used as a mere cover."

That the agreement of settlement, as it is claimed to have been by the respondent, was manifestly very advantageous for him and very disadvantageous for the complainant, is apparent, in our opinion, at a glance. So manifestly disadvantageous to the son is it that its improbability enters into the consideration of the evidence in reference to the credence to be attached to it. When we consider the relations of these parties to one another, the relative probabilities of their respective statements, the anxiety of the father for the settlement he swears to, as indicated by his visits to Taunton, his carrying the amount of money with him before any agreement of settlement had been arrived at, his having procured the preparation of a release before his call, and taking the release and an avowed witness

with him, and his protracted interview at his son's house, extending far into the night, his son having had no advice of counsel, or previous intimation of the character of the settlement to be proposed or considered, and, most of all, the consistency of the testimony of the complainant's witnesses and the inconsistency and contradictory character of the respondent's witnesses, we are constrained to find all the issues of fact hereinbefore referred to, in favor of the complainant, but inasmuch as said release must be avoided on the ground of misrepresentation and fraud, it is unnecessary to determine what effect its execution on Sunday under other circumstances might have had.

Though the respondent's counsel strenuously urged that the alleged agreement between the complainant and his counsel was champertous, we do not see how the respondent can raise it, since the question in this case is simply whether the payment of that sum was a part of the consideration for the release. The father denied all liability for counsel fees, as he insisted he had never agreed to pay any. It is, therefore, unnecessary, in the present aspect of the case, to consider what counsel fees he would have been called upon to pay if he had been liable to pay any.

As, in our opinion, the release in this suit is voidable on account of the fraud and misrepresentation of the respondent in obtaining it, and the complainant has elected to avoid it, and has brought the money received by him into court to restore the respondent to the position that he was in before obtaining said release, the prayer of said bill to avoid said release and to order it to be surrendered for cancellation is granted.

Decree accordingly.

*Doran & Flanagan*, for complainant.

*C. J. Farnsworth and J. Osfield, Jr.*, for respondent.